We'll hear argument first this morning, Case 15-457, Microsoft Corporation v. Baker. Mr. Fisher. Mr. Chief Justice, and may it please the Court, years after Livesay, the Rules Committee considered what options should be available to plaintiffs who find themselves in precisely the situation the plaintiffs here claim to have found themselves, having class certification denied in a case where they claim the individual claims make it impractical to litigate ahead on an individualized basis. And the system that the Rules Committee adopted and that this Court endorsed in Rule 23f was a system of discretionary review. The plaintiffs' theory here, the voluntary dismissal tactic they wish to use, would upend that carefully considered rule. And it would also contravene statutory and case law upon which it is based. May I ask, a lot of your briefing in this case operates on the premise that there really was, that this claim will spring back, that there was some kind of reservation of rights such that this claim would spring back. And I'm wondering why you think that. Where do you get that from? I mean, was this something that the parties, just a general understanding in this case, that they were dismissing it, but that it would spring back if they won the appeal? No, there's no such understanding, Justice Kagan. And there's two places to look, and I can answer your question why we get to the premise that we lead off our brief with. The first is the stipulation and judgment itself, which are in the back of the petition appendix from pages 34a to 39a. And in 39a, that's the order of judgment. And it simply says that the district court grants the motion to dismiss with prejudice. And so what the plaintiffs say is because of language in the stipulation, and here I can only imagine the language in point 4 on Pet. App. 36a, where they say, after the court has entered a final order in judgment, plaintiffs intend to appeal the order denying class certification. Because of that piece of the stipulation, it's the plaintiffs who take the position and now I'm going to read to you, sorry, one more page here. On page 45 of the red brief, they say it most explicitly, I think. The Respondents say, Respondents did not abandon their rights. Their voluntary dismissal was, and they say, unequivocal that the dismissal was predicated on reserving the right to challenge the court's rulings and to revive their claims should they prevail on appeal. So I think you have two problems here, Justice Kagan. The first is the actual order doesn't exactly say what they claim it says, but it seems to be the presumption that they are adopting and that the Ninth Circuit seemed to have adopted. Kagan I guess I read your brief as having largely bought into that assumption. And if that were true, it does seem to me like you have an awfully good argument that it would not be final then under 1291. And I guess I was just asking why it was that your brief essentially, you know, for two-thirds of the brief or more, bought into that assumption, whether there was something that I didn't see or some general understanding that the parties had that suggested that that assumption was the right one to make. Fisherman No, the parties had no such understanding. All you have is what's in the paper. We start our brief with that argument because that seems to be what the Ninth Circuit accepted. And so we started by accepting the premise of the Ninth Circuit. But make no mistake, we are arguing in the alternative, Justice Ginsburg. So what we're saying is that if they did somehow manage to reserve a right to revive their claims, what they've really done is dismiss without prejudice and there's no finality. But they say they're talking about their original claims, which included the class allegation, and they argue not only at page 45 but also at page 49 that if the class certification ruling is overturned, they then will have Article III standing, for example, because they do have particular injury, you know, the spreading of the cost of their attorney's fees, the incentive payments they might receive. Fisherman Let me be clear, Mr. Chief Justice. Two things about that. The first is their defense to our mootness argument is predicated on the assumption that their claims spring back to life on remand, that they themselves can spring them back to life. And so if that is the case, we agree they're not moot, but then we go back to our finality argument. But just to be precise about their argument in defense of mootness, they do not propound any cost-spreading or attorney's fees-spreading argument like the one that was made in Roper. They do not make that argument. The only argument they make is an argument that they would have a right to an incentive award if they prevailed. And there's two problems with that, Mr. Chief Justice. The first is that only prevailing plaintiffs, according to the lower courts, get an incentive award, and by definition, if they're in the mootness argument, they will have dismissed their claims and not prevailed. And even then, the idea of an incentive award, which this Court has never endorsed, of course, but it does exist in the lower courts, is based on the notion that plaintiffs shoulder the burden of litigation. And here, you're talking about plaintiffs who filed a complaint and now would be out of the case and would show no burden whatsoever. So I don't think there can be an argument that they would get an incentive award even if this case were somehow allowed to proceed. Kagan. Kagan. Kagan. Do you think that that should be something? I mean, the lower courts did not address that question. And that question seems, at least in part, dependent on facts, that you would think the lower courts might have some better view on than we do. Would that suggest a remand on that question? Well, Justice Kagan, if the Court held that the plaintiff's claims cannot be revived and so therefore the only question is whether there's a mootness problem, we think the law is clear enough in the reasons I just described that it's so clear they wouldn't be entitled to an incentive award based on individual claims they brought and immediately dismissed that you could hold that the case is flat-out moot. If there were any doubt about that ---- There was no discovery here? There was no discovery because what we had is motion practice that was based on the earlier case where there were 16 months of discovery in the earlier case. Remember, the lawyers came in with new plaintiffs in this case, and the parties stipulated that because of the 16-month record that was developed the first time around, we could just go straight to motions practice about whether the class certification was approved. Sotomayor, you've been arguing this in the alternative, but what do you think is the critical fact for you? Is it that they dismissed their claim voluntarily? Is it that they dismissed their claim voluntarily with prejudice? Is it that the case is not moot? What's your best argument and what's your best critical fact that defines the outcome in this case? I think the easiest way to decide the case, Justice Sotomayor, is to say when they dismissed their claims with prejudice, their claims were gone forever. And that would be consistent ---- Does that mean that there is no ---- I mean, I personally don't like absolutes. And so I haven't been able to imagine a situation in which a case is dismissed with prejudice, but where there may be some issues that should survive. And I don't actually haven't done research on this, so I may be asking a question that's already been answered by our case law, but let's assume an attorney-sanction, something of that nature. If I don't buy an absolute, how do I articulate it? When you dismiss with prejudice all your claims, all appeals are waived, or all appeals but, how do we answer that? So I think you can answer it in two steps. The first is you can start with the Court's Deakins case, which we cite at the beginning of our mootness section of our brief, which I think says quite clearly that when And so then the only question is whether there's an exception to that rule. And I think that there may be an exception for situations where plaintiffs dismiss their claims after a ruling from the trial court that decimates their claims on the merits. And so as the Court put it in the old Thompson case in the 1800s, when all that was left was just to make the appeal more expeditious when the plaintiffs have already lost on the merits, then a voluntary dismissal does not necessarily preclude an appeal. Kennedy, but that's a Kennedy, can you give me an example of what that would, you have an antitrust case, and the Court insists that the market be interpreted so narrowly that the case that doesn't make much sense, would that work? Yes, that actually, the hypothetical you just said, Justice Kennedy, is quite close to the Thompson case itself, which was an antitrust case. And the Court issued a ruling, a pretrial, that said you're going to have to prove unreasonableness of the restraint of trade. And the plaintiffs said, well, all we can prove is a restraint of trade, and if you're going to have to prove unreasonableness, we can't do that. Kennedy, an adverse evidentiary ruling under Daubert, this expert can't testify. By and large, that is Kennedy, decimate your case. Well, if it truly decimated your case, then perhaps, at least according to some of the lower courts, you could take an appeal from a voluntary dismissal. But the Garden-Variety evidentiary ruling would not allow that tactic. And that's the Evans case, which goes all the way back to shortly after the founding, where the government itself was at trial, and a district judge precluded one of the government's witnesses from testifying. The government then dismissed, tried to take an appeal to this Court, and this Court dismissed the appeal. Alito, what you're creating with that is not just a small loophole. What you're creating is an enormous gap, because any interlocutory order could be characterized by the party that loses as something that's critical to the case. So any interlocutory order could then be appealed. Well, Justice Alito, I think you could take an absolutely firm position to preclude that possibility, but I think if you were to approach the case like Justice Sotomayor does and say, can we at least leave open for another day the possibility of a pretrial ruling that truly decimated the merits, allowing an appeal, I think you could say that, too. And if I could add to that, what is decimate the merits? What does that mean? Well, I think that you have effectively already lost on the merits. It is impossible to go forward because of a ruling that goes to the substance of your claims. And I would just hasten to add that whatever the rule might be, and whether it's absolute or whether there's an exception, this is the easiest case possible, because the Court has said over and over again that a class certification ruling has nothing to do with the merits. Breyer, I don't understand how it normally works, which it should. Trial judges must face this all the time. The plaintiff has lost a motion, he has nothing left of his case, he says, judge, I have nothing really left of my case. They can move for summary judgment or and let them move forth, the defendant. I must be weird if the defendant doesn't. I mean, I can't imagine such a case. But if he didn't, I guess the trial court would say, defendant, move for summary judgment. And then if he just refused to, I don't know what would happen. I guess the plaintiff could go and ask for a mandamus of the trial court to insist that they move for summary judgment. The case is over. How does it work? Fisherman, Well, I think by and large, Justice Breyer, in your hypothetical, the defendant, of course, would move for summary judgment. Or if the defendant didn't, the district judge might bring the parties in for a conference and say, is there anything left of this case, should we go ahead? And of course, that's going to get worked out in the ordinary course of business. Breyer, It will be the defendant who moves for the summary judgment, and then it will be entered in his favor, and then the plaintiff, of course, will have an appeal. Fisherman, That's right. Breyer, I would think that was the normal system. Fisherman, Absolutely. And that's what's so different than this case, is that the plaintiffs even now don't claim there's anything wrong with the judgment against them. They ask for the judgment against them. Roberts, There's a lot left of their case. They're just the individual claims, not the class claims, right? Fisherman, Well, there are no class claims, Mr. Roberts. So what's left of their case are the individual claims. Roberts, Well, they've given up their individual claims. Fisherman, No, no, I know. But, yes, but that's like any appeal. When you have an issue, a claim left, and you lose, you appeal. Now, the only thing that's different about this case, of course, is that the loss was entered voluntarily. And I think the critical point, you argue, whatever they're appealing, it isn't that they shouldn't have lost. But it's not as if there's nothing left of the case. What's left of the case is their individual claims. Fisherman, Well, their claims have been given away, remembered, Mr. Chief Justice. And maybe if I don't want to miss what you're asking me, but either they have reserved the right to revive their claims, in which case I would agree. Their individual claims are still alive, but we don't have a final judgment. Or they've given them away. Roberts, Their claims are alive prior to their voluntary dismissal. Fisherman, That's right. Roberts, Okay. Fisherman, And they're not claiming anything wrong with that dismissal. They're not claiming anything wrong with that voluntary dismissal. The district judge gave them exactly what they wanted, and on appeal, they're not claiming anything wrong with that dismissal. They're not claiming so there's no adversity in the way Justice Breyer would describe it. Breyer, can you explain to me just how does it work in an ordinary case? A class action is special in this respect. I bring a class action. The defendant, I say, has told the biggest lie anyone has ever told, and it violates 19 statutes. Unfortunately, my client is damaged only to the extent of 10 cents. But I'd like to bring a class action. All right? Now it's going to be worth it. And the judge says, no, you can't. All right. At that point, what is the plaintiff supposed to do? He thinks the judge's ruling is wrong. He doesn't want to pursue a claim that's only going to be worth 10 cents, because of that, he's most likely to get no more than 2 cents for the lawyer himself. Right. All right. So what is supposed to happen? Well, that's exactly the problem the Rules Committee considered, Justice Breyer. What they held is that in that situation, the plaintiffs can go to a court of appeals and ask for discretionary appeal and say they can argue, just exactly as you did, that our claim isn't worth it on an individualized basis, and for that reason, you should grant us a right to interlocutory appeal. If that right, however, is — I'm sorry, if that request is denied by the court of  is a right to interlocutory appeal in the case of the death knell, I would say, where the Court unanimously held. Ginsburg. And they're in that position because this Court rejected the death knell rule. It may well be a death knell, but this Court said no death knell. Exactly, Justice Ginsburg. And the Court rejected it unanimously for many good reasons. Most importantly, it rejected it because of the proper balance between trial courts and courts of appeals. So even if the plaintiffs say we have a death knell situation, and even if it really is, there are very real costs on the judicial system that would be imposed by a right to automatic appeal. So just out of curiosity, I'm sorry. Do you have any idea what the statistics show about how often appellate courts grant interlocutory appeals under 23F? Yes. That's in the briefing, Mr. Chief Justice. It's in a couple of footnotes, and it's around 20, a little bit over 20 percent. And what criteria did they use? Well, they're allowed under the rule to use any criteria they like. And one of the leading uses Do they, you know, basically take a peek at the merits? What do they do? Yes. They might take a peek under the rug. Well, if the merits of the class certification motion, of course. Sometimes a peek under the rug of the merits of the case itself to see whether it's worth their time, as the Ninth Circuit may well have done here. Also, as I was just saying, the plaintiffs can argue that otherwise it's the death knell of their case. And so the exact argument the plaintiffs are making here, the exact problem they're presenting to the Court is what the Rules Committee said in its notes is a proper basis for Rule 23F appeals. And they made one change, I think, that would be favorable to the plaintiffs. That is, 1292B is double discretion. You have to get permission from the district court and then again from the court of appeals. In 23F, it's only the court of appeals. You don't need to get permission from the district court. That's right, Justice Ginsburg. And so there's actually two things that are important here. One is, yes, plaintiffs are better off in class actions than in ordinary cases for that reason. And on the other hand, the cost to the judicial system of allowing an automatic right to appeal to be manufactured the way they would here are higher in the class action realm. And that's partly because of Rule 23C, which says that denials of class certification or grants, for that matter, are inherently tentative, and even district judges can reconsider them. So a plaintiff faced with a genuine death knell situation, this Court held in live say, should go forward. If they believe in their case, they should go forward. The district judge might reconsider his view. The plaintiffs might want to repackage the way they're making their arguments, whether it's the certification of the class or the particular claims they're bringing. If that fails, they should go ahead, maybe motions practice will end the case. But if they believe in their case, the Court held in live say, the plaintiffs have a remedy to go forward and then take an appeal at that point. Robertson, But as a practical matter, that's not going to happen, right? I mean, if just their individual claim, it's worth, in Justice Breyer's case, $0.10, and you say, well, you can go forward with the whole litigation that's premised on class allegations and something is involving an enormous amount of discovery like this case. I mean, you know, their point is that you win because the practical reality is they're not going to go forward. Well, Mr. Chief Justice, first of all, maybe the $0.10 hypothetical is rather in the extreme, but the rules committee looked at it. But given the expense of litigation, it can be $10,000 and it's still not going to be worth it to go forward. Well, no, it might well be for a couple of reasons, Mr. Chief Justice. First of all, I would just add as an empirical matter that the 1996 study that's cited in the briefs that led to Rule 23f cites multiple instances of plaintiffs going ahead in cases after they've been denied class certification. And so there's a couple of reasons why they might do that. I'm going to take this case as an example. The State laws under which they're trying to prevail on the merits have fee-shifting provisions. And so the Court is quite familiar with scenarios where plaintiffs go ahead with low-dollar cases or, indeed, no-dollar cases with the prospect of fee-shifting ahead. And, you know, that should not be taken lightly. That's something the plaintiffs can use to their advantage. Also, the key is whether the plaintiffs believe in their case, I think. If the plaintiffs believe in their case, I think there's every reason to go ahead. The difficulty is if the plaintiffs don't so much believe in their case, every incentive is to have litigation go the way this has, which is ten years of fighting about class certification with not a single motion yet on the merits. And that's the difficulty of a situation like this to the judicial system, not just to the cost of appellate courts of being forced to weigh in on potentially very difficult and complex class certification issues that would otherwise wash out of the case, but also defendants being forced to undergo a tactic that would make it so that it does not have when the converse is the case. In other words, where there's a grant of class certification, defendants have no way to manufacture an automatic right to appeal. And that was another element. Ginsburg. This was a case where there were two Rule 23-F motions, both denied, and we are talking about the same court of appeals. Was there any effort when this appeal, the case that's now before us, to get it to the same panel? We had three different panels, didn't we? For the rule 23-F? Fisherman. Well, Justice Ginsburg, to be precise, actually, there are two different cases. So there was a first case where class certification was denied and then Rule 23-F was denied, and that case went away. Ginsburg. And then you had the second case, which is the one we have here, and then it went up to Rule 23-F, to the Ninth Circuit, and a motions panel looked at that and denied review. And I think the way the Ninth Circuit procedures work is that motions panels are simply different than case merits panels. Microsoft did ask, upon the filing of the appeal that is before you right now, for the Ninth Circuit to dismiss the case for lack of jurisdiction at the outset. But what the Ninth Circuit did is scoot it over to a regular panel, and that's how we got to where we are today. Alito, but it is odd that the panel that decided the case, finally decided the case, apparently thought that this was a proper ground for this to go forward as a class action, right? No. No, Justice Alito. Well, they said the class allegations were improperly dismissed. Right. So let me say two things. One is, to be precise about what the Ninth Circuit panel held, all they held was that the district judge abused his discretion by misreading a Ninth Circuit case concerning whether or not class certification was appropriate. The Ninth Circuit did not consider whether class certification was actually appropriate or even whether the causation argument that is at the center of Microsoft's objection to class certification was correct. Yeah. Okay. Well, let me state it more precisely. The final decision of the Ninth Circuit was that there had been an error by the district court regarding class action certification. That's correct. And I think it goes to the nature and actually the benefit of Rule 23-F's discretionary review system, which is, just to use this Court as an example, it might deny certiorari on a meritorious claim, thinking, though, that the error would be harmless in any event or some other ground. So the Ninth Circuit may well have thought that ultimately, even though the district judge might have misread one of its cases, ultimately class certification is going to be denied anyway. Ultimately, the plaintiffs are going to lose on the merits anyway. It's not worth their time. And so what this plaintiff tactic is about doing, again, is foisting onto courts of appeals, appeals that often they've actually directly turned down and requiring them to expend significant resources. Alito, I understand all that, but what I'm getting at is, if this, if a 23-F appeal had been presented to the panel that decided the case that is now before us, can you say that they would have refused to hear the appeal? Fisherman, I might be able to say that. I will actually tell you that just by happenstance, one of the judges who was on the motion panel that denied the 23-F petition was on the merits panel that decided the case in front of you today. So that one judge, we know at least, voted to reject the 23-F appeal, but was forced into taking this one into consideration. Alito, how would that be consistent with the reasoning of the panel that decided the case that's before us? Because, remember, go back to the idea why we have discretionary review in the first place, Justice Alito. It's because courts of appeals, even if they're confronted with a situation where the district court might have made an error in an initial ruling on class certification, there's a few things that may cause a court of appeals, nevertheless, to deny 23-F appeal. The first is the Ninth Circuit may say to itself, this case is just in its infancy. We'd like some evidence to be entered and some motions practice to take place. Maybe the plaintiffs will reformulate their claims. Maybe the district judge will reconsider for himself his class certification motion. So maybe the district court proceedings would just take care of this. The Ninth Circuit may also have thought, look, the claims here on the merits look remarkably weak, and so why should we expend our resources answering difficult class certification issues against the backdrop of a case that is going to die out anyways on the merits? And there are any number of other reasons. In fact, the Rules Committee knows goes as far as to say just simply docket congestion can be a reason for the court of appeals to say, look, this looks like a run-of-the-mill appeal. We have other more important items in front of us. So the important point here, though, is that the plaintiff's system would completely upend that regime. The Rules Committee thought very hard about Rule 23-F, and as I said, and the committee knows, considered the exact problem the plaintiffs are propounding to you here, and said the best we can do is discretionary review. Remember, the plaintiffs are actually better off, and I think this may have been Justice Ginsburg's point, post-1998 than they were for the 20 years after lives, say. Even in the situation that the Court faced in lives, say, it unanimously held that there should be no automatic immediate appeal from denials of class certification. And so even in that circumstance, the Court was quite firm, and I think for some very good reasons. If there are any other questions about what I've said so far, I'm happy to answer them. Otherwise, I'll reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Sris. Thank you, Mr. Chief Justice, and may it please the Court. If a district court commits prejudicial non-harmless error, our core position is that a plaintiff can bet her whole case on its reversal. And so I'd like to begin where Justice Kagan began and explain why, as a procedural matter, the parties have been litigating this case as if the claims would spring back to life, and then I'd like to explain why I think that's permitted. So in this case, we followed a 20-year-old Ninth Circuit procedure in seeking a conditional dismissal with prejudice. And I think I need to put some meat on the bones here so we kind of understand the procedure. This date, and it's not unusual to the Ninth Circuit, this dates back to 1995 in a case called Contra that interpreted Rule 41. And I'm going to quote from that case. Here's what the Ninth Circuit said. Quote, "...a voluntary dismissal with prejudice permits the appellate court to review the action that caused him to dismiss his case." In Contra, it was the denial of a remand motion. If the plaintiff prevails on appeal and the district court ruling is reversed, then the claim is remanded to the district court for further proceedings. So it's not a surprise that most of my friend Mr. Fisher's brief is kind of under the supposition that the claims would spring back to life, because that's what everyone assumed in the lower court. We followed that procedure. And that wasn't a class action. That was not a class action. Ginsburg. But here you have the individual claim. You may say it's not worth the candle, but you have the individual claim and that's what you have relinquished in order to take your appeal. So I don't agree with that characterization, Justice Ginsburg. I'm going to answer it directly. But what I was saying a moment ago was just to explain that procedurally what we attempted to do was conditionally dismiss so that everything would spring back to life. Now I would like to answer your question. Kagan. Just before, so there is this one case that suggested that that is what would happen. I mean, is this a procedure that's used in the Ninth Circuit? What is it used for? Why did people think that this was the governing law? So, yes, it's not one case. If you look at pages, I think, three to four of our appellate brief in the Ninth Circuit, we cite many cases where this happened in the Ninth Circuit.  And the reason that it was used in the Ninth Circuit was that it was permitted to use this procedure in many circuits. Breyer. Breyer. You didn't do that. You said you used a piece of paper I have here, whether it's a little technical, but it says, This action you moved and would be granted should be dismissed with prejudice. Then in the next paragraph you say you intend to appeal. Is that a reservation? It is. And let me explain. How do I know that's a reservation? It's out of case law. It says you can't just express a future intent. We're being technical. It says you have to make a conditional dismissal. We dismiss under the condition that we are, you know, that we're going to appeal. I understand, Justice Breyer. I'm going to explain why it is a conditional dismissal, and then I definitely want to get back to your question, Justice Ginsburg, about why I think this is permitted in the class action context. So here's why, Justice Breyer. There's long – there's a long line of cases from the Ninth Circuit about how you enter a conditional dismissal. You have to make clear that there's no settlement. That's a requirement in the Ninth Circuit. We did that in paragraph 6. It's on page 36A of the Petition Appendix. And then you have to make clear that after final judgment you intend to appeal a prior adverse order. We did that in paragraph 4. This is Petition Appendix 36A. And so you don't have to take my word for it. If you look at our appellate brief in the Ninth Circuit, pages 3 to 4, where we explain what we were doing that the Ninth Circuit accepted, and we cite a number of cases where this is used, we followed the procedure in the Ninth Circuit for doing a conditional dismissal with prejudice. Sotomayor, maybe now is the time for you to answer Justice Ginsburg's question. I would love to. So the reason why I think this is permitted in the class action context is because there's two things you need to do in order to have your claims spring back to life. One, you have to condition your dismissal, but that is to avoid a waiver argument. And then secondly, you have to show prejudicial error. And let me explain why that applies here. So what our theory is that what we have are individual claims that we're entitled to litigate on a class basis, of course, if we satisfy Rule 23. And so our theory is that when the class allegations were stricken, we were deprived of that substantial right. Ginsburg. Let me ask you, because you mentioned Rule 23, the rulemakers went through a lot of work to figure out what to do with an interlocutory ruling on class action status, and they came up with 23F. And this device seems to be just a way to get around 23F. And on your theory, would you at least, before you go to this voluntary dismissal, have to pry the 23F root? So I think every plaintiff's lawyer certainly would, and it goes to the core of what But would you have to on your theory? You would not have to, but let me tell you why plaintiff's lawyers would, and because it points up at why this is not an end run around Rule 23. So there's nothing in the balance struck by Rule 23F that suggests, we submit, any intent to either penalize or prevent plaintiffs from obtaining a final judgment by betting their case. And if you look at the advisory committee notes, we cite this in our brief, there was a circuit split at the time as to whether or not this procedure was appropriate. The advisory committee was aware of that. They cited the Second Circuit case from 1990 that permitted this. So Microsoft's position, in essence, is that Rule 23F rewrote the definition of finality without mentioning it. Now they could have. If the rulemakers wanted to have these class action decisions go up on appeal as of right, they could have made it, or asked Congress to make it, one of the interlocutory orders that is immediately appealable, like a preliminary injunction. Certainly. But then the plaintiff would have been risking nothing. In other words, to go so far as to say you have an appeal of right and your case continues is different than what happened here. Let me use Livesay as an example. I think it kind of points up at the point. So in Livesay, Cecil Livesay, this is at page 106 of the Joint Appendix in Livesay. Cecil Livesay told the Eighth Circuit that even if his certification was denied, he was going to continue litigating his individual claim. Page 16 of the Joint Appendix in Livesay, Cecil Livesay continued litigating his individual claim even after it was decertified. And as a result, that case continued and it was actually settled for $1.3 million even after the Livesays lost in this Court. That's the critical difference between an interlocutory mechanism and a voluntary conditional dismissal. If you engage in a voluntary conditional dismissal they go back, when it went back, was it litigated as a class action? Well, it couldn't be because, but they settled it as a class action. And that points up at the nature of a true interlocutory appeal. A true interlocutory appeal is not like a conditional dismissal. But you have just said, I take it, that yes, it's the plaintiff's choice, the plaintiff can ignore 23F and say, I'm going to get myself in a position where I have an appeal of right and not invoke the discretion of the court of appeals. So for any time that a corporation, that a class action is brought against a corporation, 23F is out the window. Let me try and answer. I think I can give a, hopefully, a more satisfactory answer in the following way. Even though 23F exists, a plaintiff could choose after a class allegation is stricken to litigate their individual claims to final judgment and then appeal. There's nothing in Rule 23F that, in fact, that's what Microsoft suggests you should do. So there's nothing in Rule 23F to suggest that, because it was an escape hatch, if you were, that it intended to lock the front door. So the question of course, because 23F is about a class action. It's not about an individual action. No, no, no. Perhaps I miscommunicated. What I'm saying is, if you have a class that is not certified and you think that's wrong, if you eventually litigate the case on the merits through a trial and you win, you can appeal from that final judgment. And the fact that you could have taken an interlocutory appeal earlier under 23F doesn't change that. If you tried to take an interlocutory appeal earlier under 23F, it doesn't change that. Ginsburg. But it's like any final judgment. When it's all over, you can bring up everything. Right. And our principle, our theory of this case is that any final judgment means that the case is over and there's nothing left for the district court to do. This is a final judgment. It may be manufactured. But a manufactured final judgment doesn't mean that the case isn't final.  Kagan. Kagan. Kagan. Kagan. Could I take you back, sorry, just to this sort of non-reservation reservation point? You said there were two things that you did that fit with the Ninth Circuits' procedure. You said it wasn't settled, and you said that you were going to appeal. Is that right? We said we were going to appeal a prior adverse order. Right. So where did those requirements come from? You know, if I looked at what cases would I find that that's what you have to do in order to prejudice, in order to dismiss something with prejudice in such a way that it springs back to life if you win the appeal? So the case you find on pages 2 to 3 or 3 to 4 of our Ninth Circuit brief, Conch is the leading case. There's other Ninth Circuit cases. I think Olmstead is one of them. It cites a First Circuit case called Johns, I think. Breyer. But the problem is, and it is a problem for you, that there are other circuits, and other circuits have a different rule. I mean, my law clerk has one here. I guess you got it out of the brief. It says a settlement. Let's see. Where are we here? It's Wright. It's called Wright. It's from the Eighth Circuit or Fifth. I don't know. It says an expression of intent is not a reservation of a right to appeal. So you're in a dilemma. If you say I condition my dismissal upon my later appealing, you run into the case, which happens to be our case rather than the Ninth Circuit's, called Libran, which says then the judgment isn't final. But if you don't reserve something, you're in the box you're in right now. And the case is over. And so you think of this thing called intent, which is perhaps an unknown creature before you thought of it. I don't know. And then you say, aha, we're not really conditionally dismissing, so we're not out for that reason. But we are reserving an intent, and therefore we get to say that it's final and can appeal the issue. The Rules Committee, having worried about yours and similar problems, says here's what we'll do for you. We'll give you that F, interlocutory appeal. Now, why should I not think about the case just that way? So I think even if you do think about the case that way, we're right, Justice Breyer, and here's why. You certainly need to dismiss with conditional prejudice. If you think that did not happen here, then I think the case comes to you on those terms. The Ninth Circuit thought that. But if you dismiss with conditional prejudice, what you said is that this runs square up against Livesay. That's where I disagree with you. And the reason I disagree with you is Livesay was a true interlocutory appeal. It was an ongoing case. And that is not a formalistic distinction with no practical significance. That's the whole enchilada, in my view. And here's why. In an ongoing case, we know that Justice Stevens and the Court in Livesay didn't think that people didn't have the right to continue, because if they did, why would the various circuits have developed these unbelievably complicated and difficult tests where they were doing evidentiary hearings in the district court and then reviewing it on appeal? In an interlocutory posture, the core problem with the death knell doctrine was that it was unworkable. Of course it undermined the final judgment rule. But if you have a true final judgment, whether it's manufactured or not, and this goes back to your question, Justice Ginsburg, I feel like I haven't really, you know, vigorously advocated my position on this. I really believe that Rule 23f says nothing on this question, because it was changing things. It was giving people options. But they were interlocutory options. They were options where the presumption was not that the case would be stayed. The presumption was not that if you lost, you couldn't continue litigating your individual claim. And the response of my friend, Mr. Fisher, in the briefs is, oh, well, that argument is too cute by half, because in reality, in the death knell settings, people weren't doing that. Sotomayor, what is the circuit split on this? On which issue? On this very issue of these conditional appeals. I'll call them without consent, because in the criminal area, I'm aware that the government and a defendant can agree to reserve an appeal on a search issue, for example. Yes. But if there's no agreement and you plead guilty, you've waived. There seems to be a separate procedure that you're describing. What's the circuit split? So I'm going to answer that, and I want to say three things. The first is, there's actually a series of circuit splits. There's a circuit split on whether this can be done in the multi-claim context, where the Second Circuit and the Federal Circuit say you can. They say they embrace the same theory, and they say if you have a core claim that you really can't, it's your primary claim, and it's dismissed, 12b-6, summary judgment, but your peripheral claim exists, persists, every circuit would say you could dismiss that without prejudice forever and take your appeal. But the Second Circuit and the Federal Circuit say you can dismiss the peripheral claim with conditional prejudice. Well, that's a different question, but, I mean, you've spoken a lot about Ninth Circuit precedent. But what is your best support in any case from this Court for the proposition that a voluntary conditional dismissal with prejudice is a final decision? And for Procter & Gamble, Your Honor, and in Procter & Gamble, you have a discovery order saying that the United States had to turn over a grand jury transcript. If you read the briefing, if you look at the oral argument, the parties conceded it had no effect on the plaintiff's case, the government's case. It was a purely case. Ginsburg. That's why it had everything to do with the merits, because the argument was secrecy. If the government's position was, well, if we turn over the transcript, we've lost the whole thing is about the government's secrecy plea. So they were seeking, essentially, to review a merits ruling that is rejecting the secrecy plea. Well, I don't think I agree, Justice Ginsburg. It was an antitrust case where the government had antitrust claims against the soap companies. And they were ordered to the government was ordered to turn over a grand jury transcript, right? That's correct. And the reason this is important, and it answers Justice Alito's question, is the government, that was a collateral order that the government felt strongly that they shouldn't have to obey. The Court did not order them, under Rule 37, to turn it over or we're going to terminate the case. The government, Justice Alito, went to the Court and said, when you decide what sanction you want, because it was likely, as Procter & Gamble pointed out, that they just would have imposed an evidentiary sanction or an adverse inference sanction, the government said, please don't do that. Please impose a terminating sanction so we can appeal what would otherwise be an interlocutory rule. Well, it's one thing when a party who suffered a very serious adverse ruling on an interlocutory order says, okay, we give up, go ahead and enter judgment for the other side. That's one thing. It's quite another thing, possibly, when the party that has suffered this ruling moves for a voluntary dismissal. An order cannot be final unless it defeats everything that you asked for. So any possibility that you would get attorney's fees or an incentive award or anything else, if that – if you are keeping that still on the table, if that is still on the table, then the order isn't final, I would say. And the only basis for rejecting everything that you might possibly get was your request, if you read the order that way, was your request that it be – that it be rejected with prejudice. But that's precisely what happened in Procter & Gamble, and that's precisely the argument that Procter & Gamble made. The United States, Justice Alito, was the place to say that. Well, tell me what's wrong with that as a matter of first principles. What's wrong with our position or with rejecting our position? No, with what I just said. I think what's wrong with that is it runs square up against what the longstanding definition of finality has always been. This Court has never held, Justice Alito, that a technical final judgment for practical considerations is not final. In fact, this Court has repeatedly said, and I quote, a final judgment always is a final decision. And that's true because that – the point of the final judgment rule is that if there's nothing left for the district court to do, you can take an appeal. The mere possibility of appellate reversal has no bearing on whether a case is final or not. Otherwise, no judgment would ever be final. Roberts. Well, but you're – the reversal that you're looking for does not go to the merits of the judgment that you voluntarily agreed to have entered against you. It's – that's what raises the Article III question. Nothing that you're arguing on appeal is going to change the fact that you lose. So I was answering a finality question, and I'd like to – I'd like to explain it and then pivot back to that. What I'm saying is, as a matter of whether this satisfies Rule 1291, the fact that things could spring back to life if we win on appeal is irrelevant, because any judgment could spring back to life if you win on appeal. Appellate reversal is not relevant to the question of finality. Now, you've asked a slightly different question, I would submit, Mr. Chief Justice, which is, well, don't we have an adverseness problem under Article III? And I think the answer there is no as well. Over 100 years ago in Ketcham – we cite this on page 29 of the red brief – the fact that consent, and that was a case involving literally a settlement, doesn't undermine jurisdiction. It presents a merit question of waiver. Let me read you what it says. Roberts, It's not – it's not simply the fact that you consented. It is that the arguments you're making do not go – there's not a reason why you should win, because you've already had judgment entered against you. It's one thing, it's like a normal appeal, if you've had judgment entered against you and you have arguments why it shouldn't have been. But you told the district court to enter judgment against you, so you can't argue that it shouldn't have done that. So I guess there's a few things going on there. The reason I disagree is I think that there's a question of jurisdiction, a question of waiver, and then a question of appellate procedure. Ginsburg. What about Procter & Gamble, which you've cited a number of times in this argument, but I thought that that decision said a plaintiff who voluntarily dismisses a complaint may not appeal that decision. Oh, no, no. So there's a long line of cases that say a voluntary non-suit, which is a dismissal without prejudice, can't appeal. And that's obviously right, because the plaintiff could refile that case at any time. But in Procter & Gamble, the Court was very careful to say when the government proposed dismissal for failure to obey, it had lost on the merits. And what — That is not your case. Oh, it most certainly is, because what the Court meant there was had lost on the merits of the discovery ruling. If you read it in context, both parties agree. You can look at the briefing, you can look at the oral argument. Both sides concede that the discovery ruling, saying you have to turn over the grand jury transcript, did not touch on the claim at all. It did not make it so the government couldn't win, it didn't impair the claim. So back to your question, Mr. Chief Justice, the three levels of analysis. For appellate jurisdiction, there has to be finality and adverseness. I actually think those are easy questions for us. There's nothing left for the district court to do. The fact that it could have something to do if there's an appeal has never made a judgment non-final. On adverseness, we didn't consent to this. We asked for a voluntary dismissal, but we did it with a condition. It's exactly the same as Procter & Gamble. When the Court analyzed the waiver question, they said, well, you may have consented to the dismissal, but you did it so you could appeal the prior adverse ruling. And in oral argument, there's an exchange between Abe Fortas, who represented that was a waiver case, and what Justice Frankfurter said was, well, they may have consented to having the case dismissed. Breyer. Is there anything terrible that would happen if, say, the precedent leaves this open and looking to try to simplify procedure, we'd say, if we take the other side, we leave the people in your position, ask the court of appeals for permission under F. Now, sometimes they'll wrongly deny it. Well, if they wrongly deny it, here's what you do. Go litigate your case and lose, or give up, and then appeal that final judgment for them. Now, there could be a few cases where that won't work either. But they're likely to be so few and far between that the simplicity of that and people knowing what to do is better than having 14 different cases in conflict in the different circuits and trying to figure out what we're trying to figure out now. What's the answer to what I've just said? So the answer, Justice Breyer, is I think a number of terrible things happen. The first one is you restrict the ability of parties to do this bilaterally, which happens much more often than unilaterally. We went and did research and tried to see how often this procedure was used. And it was interesting. It's used several times a year since Rule 23F had been passed. But in many of those cases, the parties agree, and I'll tell you why. Because after class certification is denied, the plaintiff decides that she does want to continue, she is willing to continue litigating her individual claims. She'd prefer to take an appeal, but she can't get one under 23F, so she says, okay, I'm going to keep litigating. And the defendants realize this plaintiff is going to keep litigating. And you know what? It doesn't make any sense, as you said earlier, to litigate a 10-cent claim or, as you said, Mr. Chief Justice, even a $10,000 claim. So let's agree that this claim can be dismissed with conditional prejudice, and then we'll go up on the issue of class certification, which is really what this case is about anyway. Under Microsoft's rule, it's not simple, because it's a jurisdictional matter and that would be prohibited. That's number one. Ginsburg. Suppose we have a case before the district court and the only issue, disputed issue, is a pure question of law. And the plaintiff says, I don't want to bother with asking a district judge to resolve this question of law. Judge, enter a voluntary dismissal of my complaint. So the tribunal that will determine the question of law is the three-judge panel on the court of appeals. I skip over the district court. I think your theory would cover that. Oh, certainly not. Certainly not. The practical backstop is 28 U.S.C. 2111. There's a reason why this has not been used by plaintiffs frequently and it won't, because you have to show prejudicial error. It doesn't matter your example is an extreme one. Of course you couldn't do that. But in even more run-of-the-mill examples, an evidentiary ruling, a discovery ruling, you wouldn't get reversal. But I really want to go back to your question, Justice Breyer, because at the end of the day, if there's not some serious practical downside, I understand the allure of basically saying you shouldn't be able to manufacture finality. There are very serious downsides and reasons to stick with the long-settled definition of the term. There's the bilateral issue that I mentioned. There's also the reality of what will happen in class cases, and here's what I mean. Under our rule, if you lose the appeal, if we lose the appeal, the case is over. If we win the appeal, the stakes are better known. If you reject our rule, if you say that the circuits that have said this is impermissible, particularly as a jurisdictional matter, are right, here's what's going to happen. You're going to have small dollar value individual claims that are abandoned without regard to merit. This case is a perfect example. You heard my friend, Mr. Fisher. One of the judges that was on the 23F panel was also on the merits panel. Microsoft responded to our 23F petition by saying, there's no death knell here. This isn't a case where the plaintiffs are going to stop litigating. There's five plaintiffs' firms. That's probably why 23F was denied. And so the upshot is that many small-dollar claims will be abandoned. Now, all large claims will be litigated, but that's not good either, because they'll be litigated without knowing the stakes, and if some of them actually go to trial, we're going to have piecemeal trials. I would actually suggest that rejecting the rule of the Ninth Circuit here is more inconsistent with the spirit of the final judgment rule.  May I ask you something before your time is out about the mechanics of this? So the Ninth Circuit didn't say you were entitled to a class action. They said, District Court, you made this mistake. Now you decide the question. District Court decides again, no class action. Then you can do this again, right? That's over 23F and go right back. So that's true as a jurisdictional matter, but not really, and here's why. The idea that an issue can come up multiple times on appeal, whether it's certification or not, that's an incident of a district court not deciding an issue on fewer than all of the grounds that are possible. That could happen after a trial. That could happen at any point. When we talk about piecemeal appeals, what we're worried about is, is there an issue that would have been mooted or revisited later in the litigation? I would submit that precisely that is what doesn't happen in the 23B3 class context.  Sotomayor, where in the briefs can I find the three splits that you didn't get to? You talked about the Second and the Federal Circuit. Where in the brief can I go for the other two? So I don't think that the splits are addressed in the brief. I took your question to mean this principle of conditional dismissal. Are there splits? We didn't have occasion to brief it because we were kind of addressing the direct question before the Court. But I think if you look at Gabelli, if you look at Purdy, if you look at Gary Plastick, sort of the line of Second Circuit cases, you'll see the strong difference of opinion between the various courts. Also, if you look at, I think it's footnote 7 of our brief, the one that refers to rulemaking, it traces the history. This is an issue, this issue is not new. For 7 or 8 years, the rulemakers debated as a policy matter which side of this debate was right, and they couldn't come to agreement. And there's six memos, Your Honor, that are cited there that the reporter of the Appellate Advisory Committee wrote, and it chronicles the circuit splits. I know this is a very exciting topic to me, but it chronicles the circuit splits in a lot of detail. And you can see the policy arguments on both sides. So I suppose in conclusion, if I could leave you with anything, it would be this. This particular issue about conditional prejudice dismissals and its implications not just in the class setting but writ large is very complicated. And again, you can look at the debate and the transcripts of the Rules Committee. It has significant implications. And at the end of the day, although it may feel counterintuitive, our view is that the policy debate is the status quo is on our side. And what I mean by that is we have a technical final judgment. The core of Microsoft's position is that practical considerations, policy arguments – I don't agree with them, I'm on the other side, people who think this is a good practice – but if you believe that this isn't right for policy reasons, just as this should be done through rulemaking, we submit that this sort of change in the other direction should be done through rulemaking. Thank you. Roberts. Thank you, counsel. Mr. Fisher, 6 minutes. Fisher, 6 minutes. Fisher, 6 minutes. Thank you. I'd like to make four points. First, to address the 23F rule and the rulemaking that led to it, I'd like to say a couple of things. First, my friend says that the committee that adopted Rule 23F was aware of a circuit split and some courts having allowed this procedure they'd like to go forward with, and that's a rather remarkable statement. What you find, if you look at that footnote where that case is cited, is you find the committee's report saying that automatic appeals are not allowed in citing live say, and then there's a but-see to the one stray case that had gone the other way. And the reason why the committee thought it was in the teeth of live say was, of course, because live say held that denials of classification are inherently interlocutory and that imagine the plaintiff themselves. We talked a lot about how live say itself played out. Imagine if the plaintiff themselves in live say had gone back to the district court and said, now that we know from the Supreme Court we're not allowed to take an interlocutory appeal, what we'd like to do is dismiss our claims with the reservation of rights of going forward on them if we prevail in the court of appeals, because otherwise it's the death knell of our case. The district judge would have said, well, that's just the same thing. And, of course, the district judge would have been right. And that's exactly what the Rules Committee thought. Now, just read. Sotomayor, that's not quite right. You deny 23F and there's a choice, or no choice. You have to go ahead with your individual claim. They are betting their case. Fisherman If they dismiss the case and they don't win on the procedural basis, that's a procedural issue, that's the end of the case. Well, two responses, Justice Sotomayor, I'm sorry to interrupt, two responses. First, remember, the plaintiff in live say, under the death knell doctrine, could take an appeal only if they represented and persuaded the district court that otherwise their case was over. So in practical terms, it's precisely the same thing. And that's what the Rules Committee thought. And I'll just read you one sentence from the committee notes. They say, An order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of that individual's claim and then taking an appeal. So the Rules Committee considered this exact question and thought the only way to get an appeal for sure was to litigate the case ahead. And my friend says this is really So how do you account for this circuit split? Fisherman Well, what the peers, and I've not studied this part of the issue carefully, but that there's a lot of circuits permitting these conditional appeals. Fisherman Well, Justice Sotomayor, I think there's two levels to that question you're asking me. The first is, on the exact question here as to class certification decisions, there's an old Second Circuit decision which has been called into doubt many times and never had anything done with it. And then the only other thing you have on my friend's side is the Ninth Circuit case that immediately preceded ours that brought this issue up to you. So until the Ninth Circuit allowed this a couple of years ago, no court was allowing it in the class certification realm. And the important thing to understand about the other split, which he calls the bigger split of taking it outside the class action, is all of those cases are predicated on the notion that the plaintiff's claim has been destroyed on the merits. And that's where the Ninth Circuit made a wrong turn here. Even if you accept that, as I think you were calling, Justice Sotomayor, a more flexible rule, this case cannot possibly satisfy it, because what the Ninth Circuit missed is a denial of class certification has zero to do with the merits. And this Court has said that over and over and over again. And so the phrase my friend used that he would like to have is something that just doesn't exist. A right to appeal reserving the right on a procedural claim that has nothing to do with the correctness of the judgment below. The only counterpart that exists in the law to that is Criminal Rule 11. And there's no civil counterpart. And so when these are complicated questions, as my friend says they are, and perhaps in some ways I don't think on the facts of this case it is, but there are difficult questions about appealability and the like, what the Court has said time and again in Swint and Mohawk most recently and going back further in Amchem and the class action context is the Rules Committee is the place to resolve those questions. And the Rules Committee carefully considered this question and came up with a solution that we simply ask the Court to be faithful to today. So two other points if I have time. First of all, my friend talked a lot about Ninth Circuit procedure and Ninth Circuit case law, but the only case law from this Court that's relevant is the Deakins case, which holds that if you dismiss a case voluntarily, it does not spring back to life. That is, of course, unless there's a problem with the entry of judgment that you prove it like in the ordinary appeal, but otherwise it does not spring back to life. And that leaves him with Procter and Gamble. And I think the Court is exactly right that the government argued Procter and Gamble on the premise, and the Court accepted the premise, that the earlier order in that case had caused the government to, quote, lose on the merits. And the government did not reserve a right to revive its claims or anything like that, because that was not the argument the government made. And so as my friend describes Procter and Gamble, he might have made an argument like that might have been Procter and Gamble's argument, but that was not the argument that this Court accepted and that the government made. They're trying to make a very different argument than the Court accepted in Procter and Gamble. And if you have any doubt about that, look at the cases on which Procter and Gamble is based. The Thompson case on the one hand, and what the Court called the familiar rule that a plaintiff who cannot – a plaintiff cannot appeal after having voluntarily dismissed their claims on the other. And what the Court said is this case is like Thompson. This is like a case where your claim is decimated on the merits. And so Procter and Gamble is not a problem. And so let me leave you with one final thought, which is I agree with my friend that this case could have serious implications. We think if you rule for Microsoft, all you're doing is leaving the status quo in place from Live Say and Rule 23F and the like. But their argument would apply outside of class actions to any pretrial order on which the plaintiff would be willing to bet their case, and that would be a very serious incursion on Rule 1291 and all the case slides on which it's based. Roberts. Thank you, counsel. The case is submitted.